**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ROGER KIRK FRIEND,** | **)** | |
| | **)** | |
| **Petitioner,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 02-CV-0188-CVE-PJC** |
| | **)** | |
| **ERIC R. FRANKLIN, Warden; and STATE OF OKLAHOMA,** | **)** | |
| | **)** | |
| | **)** | |
| **Respondents.** | **)** | |

## ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state prisoner appearing *pro se*. Before the Court for consideration is Petitioner's petition (Dkt. # 1). Respondents have filed a response (Dkt. # 5) and Petitioner has filed a reply (Dkt. # 10). Respondents have also provided copies of the record from Petitioner's state court proceedings, including the preliminary hearing transcript, transcript of trial, trial exhibits and the original record (Dkt. # 7). After a comprehensive review of the pleadings and record, the Court finds the petition should be denied for the reasons discussed below.

As a preliminary matter, the Court notes that Respondent State of Oklahoma has requested dismissal as a named Respondent on the grounds it is not a proper party (Dkt. # 5). Rule 2(a), *Rules Governing Section 2254 Cases* provides that the "state officer having custody of the applicant shall be named as respondent." Eric Franklin, Warden of the Jess Dunn Correctional Center in Taft, Oklahoma, was the state officer having custody of Petitioner Friend at the time of the filing of the Petition. The Court finds that Respondent State of Oklahoma should be dismissed.

***BACKGROUND***

On November 23, 1997, the Tulsa Fire Department was called to a residential fire in a vacant house at 61 North Gary, in Tulsa, Oklahoma. Petitioner was the owner of the house but was not living there at the time. Petitioner was checking on his property and accidentally started the fire while using a Coleman heater in the living room. During his investigation of the scene, Fire Marshal Joe Allen noticed chemicals and various materials in other rooms of the house which appeared to be associated with the manufacture of illegal drugs. Law enforcement officers were summoned to investigate and determined there was equipment in the house that could be used to manufacture methamphetamine, resulting in the arrest of Petitioner.

On September 7-9, 1999, Petitioner was tried by a jury and convicted of Manufacturing a Controlled Dangerous Substance, in Tulsa County District Court, Case No. CF-97-5584. He was represented at trial by attorney Jim Fransein. The trial court sentenced Petitioner to twenty (20) years imprisonment and a fine of $50,0000.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by Stuart Southerland. He raised five (5) propositions of error as follows:

Proposition No. I: There was insufficient evidence presented at trial that Appellant was guilty of the offense of manufacturing methamphetamine.

Proposition No. II: The jury was not properly instructed, depriving Appellant of a fair trial in violation of Article II § 20 of the Oklahoma Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution.

Proposition No. III: The jury should have been instructed on the lesser included offense of possession of methamphetamine.

Proposition No. IV: Prosecutorial misconduct violated Petitioner's due process rights and rights to a fair trial

Proposition No. V: Trial Court erred by admitting evidence of other crimes in the absence of proper notice.

(Dkt. # 5, Ex. A.) On December 19, 2000, the OCCA affirmed Petitioner's convictions in an unpublished summary opinion. (Dkt. # 5, Ex. B).

Petitioner filed an application for post-conviction relief in the state district court. See Dkt. # 1 at 4. He identified the following propositions of error:

Proposition I: Ineffective assistance of appellate counsel for failing to raise issues which warranted relief

Proposition II: Omitted evidence known to both the State and the defense deprived the jury of its right to judge the case on its merits - also incorrect instructions to jury and ineffective assistance of both trial and appellate counsel

Proposition III: The State's failure to comply with full discovery deprived Petitioner of exculpatory evidence resulting in deprivation of a fair and impartial trial

Id. By order filed November 9, 2001, the state district court denied Petitioner's request for post-conviction relief. (Dkt. # 5, Ex. D-1). Petitioner appealed and, on February 15, 2002, the OCCA affirmed the denial of post-conviction relief. (Dkt. # 5, Ex. C).

Petitioner filed the instant habeas corpus action on March 8, 2002 (Dkt. # 1). In his petition, Petitioner raises the following three (3) grounds of error:

Ground 1: The evidence presented by the State was insufficient to establish Petitioner's guilt of the offense of manufacturing methamphetamine beyond a reasonable doubt, thus was in conflict to the Due Process Clause of the United States Constitution

Ground 2: The omitted evidence known to both the State and the defense, deprived the jury of it's [sic] duty and right to judge the case upon it's [sic] merits. Further, the lack of compliance with State statute thwarted the jury's ability to weigh the evidence and determination of guilt or innocence accordingly

Ground 3: Petitioner's right to due process of law and to a fair trial were violated due to prosecutorial misconduct, before and during the trial, thus this Petitioner was denied a fair and impartial trial, being free from prejudice, pursuant to Art. II § 20 of the Oklahoma Constitution and the Sixth and Fourteenth Amendments of the United States Constitution

(Dkt. # 1). In response to the petition, Respondent asserts that Petitioner is not entitled to habeas corpus relief (Dkt. # 5). Respondent contends that some of the issues raised by Petitioner are procedurally barred, some are unexhausted and would be procedurally barred if Petitioner returned to state court, some are without merit, and others are matters of state law and not cognizable in this habeas action.

***ANALYSIS***

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his habeas claims raised in Grounds 1, 2 and part of 3 to the OCCA either on direct or post-conviction appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to those claims. However, as noted by Respondent, a portion of Petitioner's ground 3 claim asserting that the prosecutor improperly persuaded a defense witness to refrain from testifying has not been presented to the state courts and is therefore unexhausted. Although Petitioner could return to state court to raise the unexhausted prosecutorial misconduct claim in a second post-conviction application, the Court finds it would be futile to require Petitioner to return to state court because the claim would undoubtedly be subject to imposition of a procedural bar. Because any opportunity to obtain redress in state court would be "futile," Petitioner's additional claim of prosecutorial misconduct as raised in ground 3 of the petition is deemed to be

exhausted for purposes of habeas corpus review. See Coleman v. Thompson, 501 U.S. 722, 732 (1991). Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims relating to violations of Oklahoma State Constitution are not cognizable on federal habeas corpus review**

Mixed in with Petitioner's arguments are various statements that his rights have been violated under the Constitution of the State of Oklahoma. It is well established that it is not the role of a federal habeas corpus court to correct errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991). This Court will address only the federal constitutional issues involved in Petitioner's case. "Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." Davis v. Reynolds, 890 F. 2d 1105, 1109 n.3 (10th Cir. 1989) (citing Estes v. Texas, 381 U.S. 532, 588 (1965)). To the extent Petitioner makes generalized statements that his rights under the State Constitution have been violated, such claims are not cognizable in federal habeas corpus. Accordingly, the Court concludes that habeas corpus relief is not available insofar as Petitioner claims his rights under the State Constitution have been violated.

**C. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated all but one of Petitioner's claims on either direct or post-conviction appeal. Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding or not precluded, the claims shall be reviewed pursuant to § 2254(d).

***1. Conviction supported by insufficient evidence (ground 1)***

As his first proposition of error, Petitioner argues that the State failed to produce sufficient evidence for a finding of guilt of Manufacturing Methamphetamine. See Dkt. # 1. Petitioner asserts that "the essential elements of this case were not proven under Constitutional principle" and the "record is absent of the necessary/essential elements which support any manufacturing charge." Id. On direct appeal, the OCCA rejected this claim, finding that:

> In reviewing the sufficiency of the evidence presented at trial, the test this Court utilizes is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v State*, 1985 OK CR 132, 709 P.2d 202. The evidence presented in this case was sufficient to sustain the conviction and Proposition I is denied.

(Dkt. # 5 , Ex. B at 2).

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence

issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n. 2 (10th Cir. 2001). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Oklahoma law in effect at the time of Petitioner's crime provides the substantive elements of the offense of manufacturing a controlled dangerous substance applicable to the sufficiency of the evidence standard. Tillman v. Cook, 215 F. 3d 1156, 1131-32 (10th Cir. 2000) (state law determines elements of offense). The elements of Petitioner's crime are set forth in the Oklahoma Uniform Jury Instructions used by the trial court as follows:

> No person may be convicted of manufacturing a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, knowingly or intentionally;

Second, manufacturing or attempting to manufacture;

Third, the controlled dangerous substance of Methamphetamine.

(Dkt. # 7 at 68).

After viewing the evidence presented at trial in the light most favorable to the prosecution, the Court finds that the jury could reasonably have found proof of guilt beyond a reasonable doubt that Petitioner committed the offense of manufacturing a controlled substance (Methamphetamine). During Petitioner's trial, the jury heard Petitioner testify that he caused the accidental fire at a house he owned by trying to light a Coleman heater in the living room. (Dkt. # 7, Tr. Trans. at 209-10). Petitioner also testified that the house was vacant because he had moved out a little over a month before. (Id. at 205). The jury also heard testimony from police that components of a methamphetamine lab were found in Petitioner's house, including tubing, glassware, Red Devil lye, cans of starter fluid, beakers, spoons, acetone, turkey basters, a battery, iodine crystals, a respirator, a garden sprayer, five gallon buckets, nasal decongestant inhalers, and coffee filters with methamphetamine and pseudoephedrine residue. (Id. at 154, 168-74, 192-97). Pictures of the "meth lab" found in Petitioner's house were also introduced as evidence for the jury's consideration. (Dkt. # 7, Tr. Exhibits). Petitioner also testified that a phone card found in the midst of the lab components was his. (Id. at 229-30).

Based on Oklahoma law and the cited testimony, the Court finds that a rational trier of fact could have found proof of Petitioner's guilt beyond a reasonable doubt of Manufacturing a Controlled Dangerous Substance. Thus, Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the sufficiency of the evidence shall be denied.

***2. Challenge to comments made by the prosecutor (ground 3)***

As his third proposition of error, Petitioner alleges that several instances of prosecutorial misconduct rendered his trial fundamentally unfair and constituted a deprivation of his due process rights. The Oklahoma Court of Criminal Appeals considered the prosecutorial misconduct claims raised by Petitioner on direct appeal and found none of the alleged instances of misconduct warranted relief. (Dkt. # 5, Ex. B at 3).

The Supreme Court has prescribed rules that govern Petitioner's prosecutorial misconduct claims. Therefore, this Court must determine whether the Oklahoma Court of Criminal Appeals' decision on these claims is "contrary to" such rules. 28 U.S.C. § 2254 (d)(1).

Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. *See* Caldwell v. Mississippi, 472 U.S. 320, 338, 105 S. Ct. 2633, 86 L. Ed.2d 231 (1985) (plurality opinion). When a prosecutor's comment or argument deprives Petitioner of a specific constitutional right, "a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed.2d 431 (1974)). A prosecutor's improper comment or argument which does not deprive a defendant of a specific constitutional right will require the reversal of a state conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. Donnelly, 416 U.S. at 643, 645. *See also* Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

The inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding. Donnelly, 416 U.S. at 643. The complained of remarks or arguments must be considered in the context in which they were made. Greer v. Miller, 483 U.S. 756, 765-66 (1987); *see also* Darden v. Wainwright, 477 U.S. 168, 179, 106 S. Ct. 2464, 91 L. Ed.2d 144 (1986).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (citations omitted). In addition, the Court must consider "the prejudice, if any, attributable to the prosecutor's comments." Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994). The Court will apply these principles to Petitioner's specific claims of prosecutorial misconduct.

*Comments implying Petitioner was a "bad person"*

Petitioner first complains about the prosecutor's attempts to show the jury he was a "bad person" because he had lied to his aunt about pawning one of her rings. Petitioner contends that this was an improper attempt by the prosecution to "solicit the sympathy, passion, and prejudice of the jury" and that it was not relevant nor proper impeachment. (Dkt. #1 at 28). The original testimony about the ring was given by police officer Francetic responding to the prosecutor's questions:

Q: Now, also, Officer Francetic, with regard to your investigation outside the residence, at any time when the defendant was in the Tulsa Police Department's custody, did you observe him communicating with anyone other than Tulsa police officers?

A: Yes, I did.

Q: And who would that -- who would he have been communicating with?

A: The lady was identified to me as his aunt. An older lady, seventies, had shown up at the scene, concerned for her nephew.

Q: And did you overhear the conversations they had?

A: Yes, I was standing right next to them.

Q: And what conversations were had?

A: She was checking first was he okay, because his hair was singed, and his shoe was burned a little bit. And she also inquired into a family heirloom, a ring that he had of hers.

Q: Okay. And what further happened?

A: Mr. Friend indicated that it was inside the residence, that possibly the fire -- he insinuated that a fireman may have taken it or was lost within the fire.

Q: And, Officer, based on your investigation at the scene, did you find anything contrary to what the defendant said at that point?

A: Yes, I did. Within his wallet there were a couple of different items, one being a pawn ticket for the said ring. I gave that copy back to his aunt.

Q: So would this have been the same ring that he has told his aunt that was either -- the fire department took it or was burned?

A: Yes.

Dkt. #7, Tr. Transcript at 179-80. Petitioner's counsel did not object to this line of questioning, and his defense counsel elicited testimony from four witnesses, including Petitioner, to rebut the implication in Officer Francetic's testimony that Petitioner was not truthful. Id. at 206, 246, 251, 258.

After reviewing the entire trial transcripts and applying the Donnelly standard, the prosecution's efforts to show that Petitioner had lied to his aunt regarding an heirloom ring did not infect the trial so as to make it fundamentally unfair. Petitioner is not entitled to habeas relief on this claim.

*Comments regarding Petitioner's association with methamphetamine users*

Petitioner next complains that the prosecutor attempted to establish that Petitioner associated with known methamphetamine users and had been stopped for a traffic violation two days before the fire with a case of pseudoephedrine in his possession. (Dkt. #1 at 29-30). Petitioner argues that the state's "injection of improper or prejudicial material" deprived him of a fair trial. The Court disagrees and finds that the actions of the prosecution regarding this claim did not infect the trial so as to make it fundamentally unfair.

Petitioner specifically contends that the following question during his cross examination by the prosecutor violated his constitutional rights to a fair trial:

> Q: Now, Mr. Friend, were you stopped two days prior to this fire, and in your possession you were determined to have pseudoephedrine?
>
> A: Absolutely not.

Dkt. #7, Tr. Trans. at 222. At this point Petitioner's trial counsel objected, saying he "didn't even understand the question." The trial court repeated the question and counsel objected on the grounds that it was "outside the scope." Id. at 223. The court overruled the objection and Petitioner reaffirmed his answer by stating, "I did not." Out of the presence of the jury the Court inquired of the prosecutor concerning the basis of his question. After determining that the question was improper, the trial judge admonished the jury as follows:

> Ladies and gentlemen of the jury, yesterday a question was asked the defendant concerning his possession of pseudoephedrine at some previous time. You are to disregard that. Disregard the question, any information that he may have been in possession of pseudoephedrine. I can't make it any clearer. Forget about it; all right?

Id. at 249. In light of the strength of the evidence of Petitioner's guilt, as detailed earlier, the Court does not find that the above improper questioning by the prosecutor "tipped the scales in favor of the

prosecution." Fero, 39 F.3d at 1474. Further, the curative admonishment made by the trial judge mitigated whatever effect the questioning may have had on the jury. Id. The prosecutor's improper question did not deny Petitioner a fair trial and he is not entitled to habeas relief on this claim.

*Miscellaneous unspecified comments*

Without citing to specific instances in the trial record, Petitioner contends that the prosecutor mislead the jury, testified regarding his own personal opinion, sought to bolster the credibility of the state's witnesses, and misstated the evidence. Id. at 31-32. Although Petitioner cites numerous cases and provides lengthy argument about the law concerning prosecutorial misconduct, he fails to apply the law to specific instances in his trial. Although Petitioner "respectfully directs the Court's attention to the trial transcript" (id. at 31), he neglects to provide any details from his trial to support his general allegations that the prosecutor made "improper comments of personal belief as to guilt of this Petitioner" (id. at 29), vouched for the credibility of witnesses, or misstated the evidence. His arguments do not show how the OCCA's decision in his case was contrary to or an unreasonable application of federal law as determined by the Supreme Court. He simply makes conclusory statements that his rights to a fair trial were violated by the prosecutor's comments. Because Petitioner has not demonstrated how the alleged prosecutorial misconduct was so egregious in the context of the entire trial that it rendered his trial fundamentally unfair, habeas corpus relief on this claim shall be denied. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998).

**D. Procedurally Barred Issues**

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)). To determine whether a state procedural bar is an adequate and independent ground to bar federal review of a constitutional claim, this Court must apply the state's rule in effect at the time of the purported procedural default. Barnett v. Hargett, 174 F.3d 1128, 1134 (10th Cir. 1999).

***1. Brady claim is procedurally barred (ground 2)***

As his second proposition of error, Petitioner asserts that allegedly exculpatory evidence was omitted from his trial in violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, Petitioner appears to be complaining that certain material requested through discovery was not produced by the State. See Dkt. # 1 at 22 and # 10 at 6. Petitioner first raised this claim in his post-conviction proceedings. In rejecting the claim, the OCCA affirmed the state district court's imposition of a procedural bar, finding that "all issues not raised on direct appeal, which could have been raised, are

waived." (Dkt. #5, Ex. C). Respondent asserts that this Court should uphold the procedural bar imposed by the OCCA.

The Court agrees with Respondent that Petitioner's claim regarding suppression of evidence is procedurally barred. The OCCA's procedural bar is an "independent" state ground because Petitioner's failure to comply with state procedures "was the exclusive basis for the state court's holding." Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). The Court also finds that the bar imposed by the OCCA on Petitioner's Brady claim is based on state law grounds adequate to preclude federal review. See Cannon v. Gibson, 259 F.3d1253, 1269 (10th Cir. 2001).

As a result of the procedural bar, this Court may not consider Petitioner's Brady claim unless Petitioner is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In this case, Petitioner makes a summary statement in the conclusion paragraph of his petition that the cause for his failure to raise the defaulted issue on direct appeal was ineffective assistance of appellate counsel. (Dkt. #1 at 33). In his reply, Petitioner fails to provide a coherent explanation

for the cause of his procedural bar[1]. It is well established that in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986). However, the assistance provided by appellate counsel must rise to the level of a constitutional violation under the standard established in Strickland v. Washington, 466 U.S. 668 (1984). Id. Strickland announced a two-pronged standard applicable to ineffective assistance of counsel claims: the petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998). In assessing an ineffective assistance of appellate counsel claim, the Tenth Circuit Court of Appeals has held that "the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [Petitioner] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001).

Petitioner has provided nothing in support of his claim of ineffective assistance of appellate counsel to suggest that Petitioner would have prevailed on appeal had appellate counsel raised Petitioner's claim of suppressed evidence. Petitioner does not adequately describe what the alleged

[1] "Petitioner can demonstrate cause for not raising it [second proposition] in a prior proceeding. . . . As presented in the application, Petitioner demonstrated why this [sic] issues could not have been previously raised. See Specially pages 17-35 because these issues was [sic] not addressed, the State appellate review did not serve in this case to vindicate the due process protections that follows **WINSHIP**, the same could also be said of the vast majority of other federal constitutional rights that may be implicated in a State criminal proceeding." (Dkt. # 10 at 6). The Court notes that pages 17-35 of Petitioner's application contain a lengthy summary of legal quotations and argument, but offer no explanation for Petitioner's failure to raise his Brady claim on direct appeal other than a conclusion on page 33 that "due to his Appellate Counsel failing to raise the proposition herein, within his Direct Appeal, issues that warrant reversal, is cause for procedural default (Point II)." (Dkt. # 1 at 33).

suppressed evidence was, nor does he explain how raising the Brady issue would have changed the outcome of his direct appeal. His conclusory statement that the issues not raised by his appellate counsel were issues that "warrant reversal" is unconvincing. As a result, Petitioner has failed to establish that he was prejudiced by appellate counsel's performance. Having found no prejudice, the Court finds it unnecessary to address the "deficient performance" prong of Strickland, See Murray v. Carrier, 477 U.S. 478, 496 (1986) (cause and prejudice exception is conjunctive, requiring proof of both cause *and* prejudice). Ineffective assistance of appellate counsel cannot serve as "cause" to overcome the procedural bar applicable to Petitioner's claim.

Petitioner's only other means of gaining federal habeas review of his defaulted Brady claim is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Snaffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Id. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. Petitioner does assert that he is actually innocent of Manufacturing a Controlled Dangerous Substance. However, he has presented no new evidence in support of his claim. At most, his claims constitute legal innocence rather than actual innocence. Beavers, 216 F.3d at 923. As a result, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case. The Court

concludes that Petitioner's ground two claim of suppression of exculpatory evidence by the prosecution shall be denied as procedurally barred.

**2. Unexhausted claim regarding failure of witness to testify is procedurally barred (ground 3)**

In ground three Petitioner contends that the prosecution contacted one of its witnesses, Linda Miller, and"talked her out of testifying" because she would have supported Petitioner's defense. (Dkt. #1 at 27-28). As noted above, Petitioner failed to exhaust available state remedies for this claim. Although the Court could require Petitioner to return to state court to raise the claim in a post-conviction application, the Oklahoma Court of Criminal Appeals routinely applies a procedural bar to such claims unless the petitioner provides "sufficient reason" for his failure to raise the claim in an earlier proceeding. Okla. Stat. tit. 22, § 1086; Moore v. State, 889 P.2d 1253 (Okla. Crim. App. 1995). Because this claim would be subject to a procedural bar in the state courts, the Court finds it would be futile to require Petitioner to exhaust this claim. See Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (the futility exception is a narrow one, and is supportable "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief"); see also Coleman v. Thompson, 501 U.S. 722 (1991); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). Accordingly, because exhaustion would be futile, Petitioner's habeas corpus claim regarding alleged improper prosecutorial conduct in discouraging witness Miller from testifying is not barred by the exhaustion requirement.

However, under the procedural default doctrine, this Court may not consider Petitioner's prosecutorial misconduct claim regarding witness Miller unless Petitioner is able to show cause and prejudice for the procedural default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman, 501 U.S. at 750. Petitioner does not attempt to

show cause and prejudice for his failure to present this issue on direct appeal. Nor does he argue that a fundamental miscarriage of justice would occur if this claim is not considered.

Therefore, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result, the Court concludes that it is procedurally barred from considering the merits of Petitioner's prosecutorial misconduct claim relating to witness Miller. Coleman v. Thompson, 510 U.S. 722, 724 (1991).

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that**:

1. Respondent State of Oklahoma is **dismissed** as a party.
2. The Petition for habeas corpus relief (Dkt. #1) is **denied**.

**IT IS SO ORDERED** this 5th day of July, 2005

Claire V Eagan

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT